STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.D.-1, K.D.-2, J.J.-1, J.J.-2, and L.J.**

**No. 20-0084** (Ritchie County 18-JA-20, 18-JA-21, 18-JA-22, 18-JA-23, and 18-JA-24)

## MEMORANDUM DECISION

Petitioner Mother M.D., by counsel M. Tyler Mason, appeals the Circuit Court of Ritchie County's January 2, 2020, order terminating her parental rights to K.D.-1, K.D.-2, J.J.-1, J.J.-2, and L.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardians ad litem for the children, Katrina Christ and Keith White, filed responses on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner and her boyfriend—who is the father of J.J.-1, J.J.-2, and L.J.—engaged in substance abuse and domestic violence, failed to maintain a safe and secure home, and committed educational neglect. The petition further contained allegations that petitioner and the boyfriend requested domestic violence protective orders against each other and that altercations between them involved physical

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because several of the children share the same initials they will be referred to as J.J.-1, J.J.-2, K.D.-1, and K.D.-2, respectively, throughout this memorandum decision. Finally, the proceedings below also concerned additional children that are not at issue in this appeal.

violence toward the children. According to the DHHR, a caseworker responded to a call where petitioner was driving without a license. It was further alleged that petitioner was driving with the children in the vehicle without proper restraints. Finally, the DHHR alleged that petitioner admitted to abusing methamphetamine, was charged with criminal truancy, and had a home so cluttered that the hallways and bathroom were nearly unreachable. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in September of 2018, wherein petitioner stipulated to abusing and neglecting the children due to substance abuse, domestic violence, and educational neglect. Additionally, the court granted petitioner a six-month post-adjudicatory improvement period, and the DHHR made referrals for her to receive psychological and substance abuse evaluations.

In December of 2018, the circuit court held a review hearing on petitioner's improvement period, wherein the DHHR reported that petitioner was noncompliant with services. As such, the DHHR moved for the termination of her improvement period. Petitioner objected to the motion, citing issues with transportation as an obstacle to her participation in services. The circuit court held the motion in abeyance and ordered that services be continued until the improvement period was revoked, noting that it was "not impressed with [petitioner's] compliance." In January of 2019, the circuit court held a hearing on the DHHR's motion to terminate petitioner's improvement period. At the hearing, the DHHR asked the court to hold its prior motion in abeyance based on petitioner's improved participation in services. In March of 2019, the circuit court held another review hearing and extended the improvement period an additional ninety days.

The circuit court held a review hearing in August of 2019 regarding petitioner's improvement period. Petitioner did not appear in person, citing transportation issues, but was represented by counsel. During the hearing, the DHHR informed the court that petitioner tested positive for amphetamine and methamphetamine in July of 2019, while she was pregnant. As a result, the DHHR requested that the case be scheduled for a dispositional hearing. Later that month, petitioner gave birth to K.H., who was born drug-exposed.[2]

In October of 2019, the circuit court held a dispositional hearing. Petitioner moved for a post-dispositional improvement period, while the DHHR moved for termination of her parental rights. At the hearing, petitioner testified that she would participate in in-patient drug treatment if she was granted a post-dispositional improvement period. However, petitioner still denied having a drug problem. Petitioner also denied that any of her recent drug screens were positive for controlled substances, despite laboratory evidence to the contrary. A community corrections officer who handled petitioner's drug screening testified that petitioner failed to fully participate

---

[2]The DHHR later amended its petition to include K.H. in the proceedings below. However, because petitioner had not yet been adjudicated in regard to K.H., the circuit court's dispositional order on appeal terminated petitioner's parental rights to only K.D.-1, K.D.-2, J.J.-1, J.J.-2, and L.J. According to the DHHR, the proceedings involving K.H. are ongoing, and termination of petitioner's parental rights to this child is expected. Because petitioner's parental rights to K.H. have not yet been terminated, that child is not at issue in this appeal.

with her call-in program. The officer testified that petitioner started the program in June of 2018 and tested positive for methamphetamine four times between July and October of 2018. Additionally, the officer testified that petitioner produced two diluted samples in August and September of 2018 and could not produce a sample on at least one other occasion. The officer further testified that while petitioner did have a months-long stretch without any positive screens, she again tested positive for controlled substances in March, July, and August of 2019. Finally, the officer testified that following these positive screens, petitioner failed to appear for additional screens and produced a diluted sample in September of 2019. Next, a parenting and adult life skills provider testified that petitioner participated well during some sessions but missed other sessions due to her purported transportation issues. The provider also testified that the DHHR made her aware of petitioner's substance abuse issues and that she encouraged and assisted petitioner in obtaining treatment. However, the provider testified that, to her knowledge, petitioner never went to treatment. Next, a visitation supervisor testified that petitioner had generally good visitations with the children but that there were gaps between the visits. The supervisor also testified that visitation was eventually suspended due to petitioner's positive and missed drug screens. Finally, the DHHR caseworker testified that despite petitioner's "tremendous efforts to get her children back," substance abuse remained "the major issue that has never been taken care of."

In light of the evidence presented at the dispositional hearing, the circuit court found that petitioner had repeatedly failed to participate in drug screening, substance abuse treatment, individual counseling, and a substance abuse evaluation. Further, the circuit court found that pursuant to the call-in drug screening program, petitioner should have screened an average of once per week but had only appeared for approximately thirty-three screens from June of 2018 until December of 2019. Additionally, the circuit court found that petitioner would often appear one to three days after she was scheduled to screen and had eleven recorded failures to appear for screening. The court also found that petitioner abused methamphetamine while pregnant with K.H. and that she continued to deny substance abuse issues, despite her knowledge of lab reports that showed she tested positive while pregnant. Finally, the circuit court found that petitioner failed to regularly participate in adult life skills and parenting classes and had not visited the children since August of 2019 due to positive drug screens. Based upon these findings, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[3] The circuit court entered an order reflecting its decision on January 2, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

[3]The parental rights of the children's respective fathers were also terminated below. According to the parties, the permanency plan for K.D.-1 and K.D.-2 is adoption in the same foster home. The permanency plan for J.J.-1, J.J.-2, and L.J. is adoption in their respective foster home.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period because she "had never been found to have committed abuse and neglect before this case," participated in services throughout the proceedings, and previously demonstrated by clear and convincing evidence that she would comply with the terms and conditions of an improvement period. Petitioner argues that she had a "couple of relapses and slip-ups with her substance abuse issues" but passed the vast majority of drug screens and could have addressed her issues during in-patient rehabilitation. We find petitioner's arguments unavailing.

Although there were points in time where petitioner complied with services generally, she ignores the fact that she did not complete many of the terms required by her family case plan. Most importantly, petitioner's argument on appeal largely fails to address her ongoing substance abuse issues and her failure to acknowledge or take any steps to remedy these issues. Petitioner does not dispute that she failed to participate in multiple required drug screens and tested positive on other screens. Further, while petitioner now admits that she has a substance abuse problem—after denying any addiction on prior occasions—she failed to enroll in a treatment program during her post-adjudicatory improvement period. Additionally, petitioner was offered numerous services to address her substance abuse issues including a substance abuse evaluation, individual counseling, and inpatient drug treatment. However, instead of addressing why she failed to participate in those services, petitioner's argument in support of this assignment of error focuses on her sporadic compliance with drug testing. While petitioner argues that she would have participated in an in-patient drug treatment program if granted a post-dispositional improvement period, we note that petitioner bore the responsibility of completing the goals of her family case plan, and the record shows that she took almost no steps to achieve these goals during her post-adjudicatory improvement period.

Despite the overwhelming evidence of petitioner's noncompliance, she nonetheless argues that she would have fully participated in a post-dispositional improvement period. West Virginia Code § 49-4-610(3)(D) provides that in order to obtain a post-dispositional improvement period after the granting of a previous improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." Further, the circuit court has discretion to deny an improvement period

4

when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Here, the record is clear that petitioner failed to fully comply with the terms and conditions of her prior post-adjudicatory improvement period. The evidence establishes that petitioner tested positive for controlled substances or failed to participate in drug screens, failed to participate in a substance abuse evaluation, attend individual counseling, or enroll in a drug treatment program throughout her improvement period. The circuit court considered this evidence when it terminated her post-adjudicatory improvement period and when it denied her motion for a post-dispositional improvement period. Even more importantly, petitioner fails to cite to any evidence in the record that shows that she underwent a substantial change in circumstances subsequent to her post-adjudicatory improvement period. Therefore, we find that the circuit court did not err in denying petitioner's motion for a post-dispositional improvement period.

Moreover, based on the evidence of petitioner's sporadic compliance with her prior improvement period and her failure to undergo a substance abuse evaluation, attend individual counseling, remain drug free, and enroll in a drug treatment program, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. Importantly, this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate was improper when she was making substantial progress toward reunification. We disagree and find that the circuit court's order is specific and enumerates several areas where petitioner failed to make progress as the basis for the termination of her parental rights. The circuit court's findings are based on substantial evidence that petitioner was never fully compliant in her improvement period and that she failed to avail herself of many of the services offered. Moreover, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal. As such, termination of petitioner's parental rights was appropriate.

Lastly, because the proceedings regarding K.H. are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

[a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 2, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison